UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CHERYL PHIFER,

    Plaintiff,

v.                                            Case No. 1:08-CV-665

CITY OF GRAND RAPIDS,               HON. GORDON J. QUIST
MICHIGAN, *et al.*

    Defendants.
_____/

## OPINION

Cheryl Phifer filed this claim pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1986 against the City of Grand Rapids, Michigan (Grand Rapids), the Grand Rapids Police Department (GRPD), Guiding Light Mission (GLM), Guiding Light Mission Board of Directors (GLM Board), Sergeant Deb Vasquez, Officer Robert Gannon, Richard Hertel, Rev. Danny "Chico" Daniels, and various unidentified members of the GRPD (Officers Doe) and employees of GLM (John Does). She sued the individual defendants in their individual and official capacities. Phifer, a black female, alleges that the Defendants disrupted and harassed her on numerous occasions while she protested against Rev. Daniels and GLM, infringing her First and Fourteenth Amendment rights. Defendants GLM, GLM Board, Rev. Daniels, Hertel, and John Does filed a Motion for Judgment on the Pleadings (docket no. 18). Officer Gannon filed a Motion for Summary Judgment (docket no. 74). These motions assert that Phifer's claims are barred by the statute of limitations. For the foregoing reasons, these motions are granted. Also pending are Phifer's Motion to Add Additional Defendants (docket no. 35), Defendants Grand Rapids, GRPD and Officer Gannon's Motion to Strike Plaintiff's Exhibit 25 (docket no. 51),

Phifer's Motion to Strike Defendants' Exhibits A, G & H (docket no. 62), and Defendants' Motion to Compel (docket no. 79). These motions are denied as moot.

## I.   Facts

Phifer worked at GLM from November 2001 to August 2002. GLM is a homeless shelter in downtown Grand Rapids. In July 2002, GLM learned Phifer was meeting after hours with men from the shelter at her home for what Phifer called a "dream interpretation ministry." (Docket nos. 36-2 at 3, 71-3 at 1.) On July 31, 2001, a GLM administrator asked Phifer to refrain from this unauthorized contact with GLM's patrons. The next day, Phifer accused GLM Executive Director Rev. Daniels of "initiating unwanted casual conversation and touching." (Docket no. 71-3 at 1.) Over the next two weeks, Phifer met with Rev. Daniels, GLM Board President Hertel, and others to discuss her allegation and GLM's concerns about her performance. (Docket no. 71-3 at 2-3.) On August 14, 2002, Phifer accused Rev. Daniels and GLM Development Director Jill Walton of having an inappropriate sexual relationship and notified each female GLM staff member that GLM forbade her to pursue her dream interpretation ministry. (*Id*. at 3.) GLM terminated Phifer's employment for cause that day. (*Id*.) Phifer filed a Title VII employment discrimination action against Rev. Daniels and GLM on June 17, 2005, which was dismissed by another judge in this district.

On May 20, 2005, Phifer began protesting regularly against GLM and Rev. Daniels outside GLM's facility. (Docket no. 42 at 6.) Phifer alleges that Rev. Daniels "threatened … to call the police" if she and the other protestors did not stop. (*Id*.) Officers from the GRPD stopped that day and asked if she had a permit. (*Id*.) Phifer went to the police station to inquire and was informed that she did not need a permit to protest. (*Id*.) She claims that the protestors

were "advised that we were barred from" protesting outside GLM, but does not indicate who told her this.  (*Id*. at 7.)

Phifer alleges that between May 23, 2005 and June 4, 2005, "at least four to six police officers" stopped to "inquire why Plaintiff … [was] protesting against GLM and to inquire if we had a permit."  Prior to June 8, 2005, two GRPD officers, Officer Gannon and an unidentified Officer Doe, "pulled up to [Phifer] and another protestor, K. Patterson, and threatened" them.  (*Id*.)  She claims Officers Gannon and Doe told them they could not protest on the sidewalk and would be arrested if they did not leave.  (*Id*. at 7-8).  On June 8, 2005, Phifer filed a complaint against Officer Gannon with Sgt. Vasquez of the GRPD Internal Affairs Department.  (*Id*. at 8.)

On June 9, 2005, GLM allegedly called the police.  Officer Gannon arrived and allegedly "conspir[ed] … with GLM Program Director Delbert Teachout to harass [Phifer]" and deprive her of her civil rights.  (*Id*.)  Phifer claims that after this conversation, Gannon "harass[ed] and threaten[ed] her," though she does not specify what Gannon did or said.  (*Id*.)  Gannon then wrote Phifer a parking ticket even though it was after 5 p.m.  (*Id*. at 8-9.)  Drivers are not required to pay the parking meters in Grand Rapids after 5 p.m.  (*Id*. at 9.)  This parking ticket was later dismissed.  (*Id*. at 13.)

On June 10, 2005, Phifer went to the GRPD station on Monroe Plaza with K. Patterson.  They filed another complaint against Officer Gannon with Sgt. Wayne Moore of Internal Affairs.  (*Id*. at 9.)  Phifer asked Sgt. Moore whether she could receive a restraining order against Gannon and was informed that she could not restrain a police officer from "doing police work."  (*Id*.)

Between June 11 and June 20, 2005, Phifer's vehicle was allegedly pulled over repeatedly to "unnecessarily detain and harass" her.  (*Id*. at 10.)  Phifer does not indicate what was done or said on these occasions, nor does she identify the responsible officers.  (*Id*.)  She

3

avers that on one of these occasions prior to June 21, 2005, the police told her that GLM had informed them that it had a Personal Protection Order (PPO) against Phifer. (*Id.*)

On or about June 21, 2005, approximately six unidentified GRPD officers served Phifer with a PPO while she was protesting outside GLM. (*Id.*) Phifer claims she was "verbally threatened" and told that if she or anyone else protested outside GLM, she would be arrested for violating the PPO. (*Id.*) She alleges that Rev. Daniels conspired with officers from the GRPD to obtain the PPO. (*Id.* at 11.) She claims that to obtain the PPO, Rev. Daniels falsely alleged that she had committed two or more acts of violence against him. However, Rev. Daniels' petition for the PPO does not reflect this. (Docket no. 36-2 at 2.) Phifer requested a hearing to terminate the PPO, which was held on July 15, 2005. (Docket no 42. at 13.) The court terminated the PPO because it determined Phifer was engaged in constitutionally protected activity. (Docket no. 36-3 at 2-3.)

The protest resumed on July 16, 2005. Phifer claims that on that date, two unidentified officers from GRPD "stop[ped] to harass" the protestors. (Docket no 42 at 13.) She does not describe what was done or said. On September 18, 2005, two more unidentified officers from GRPD "stopped, detained and harassed" Phifer at 6 p.m. She recorded the license plate of the vehicle they drove. (*Id.*) Phifer also alleges that the police "are still pulling [her] over … and [have] retaliated against [her] with unwarranted tickets." (*Id.*) Her Amended Complaint provides no other details regarding the alleged traffic stops, unwarranted tickets, or the September 18, 2005 incident. She also claims "Defendants [from GLM] have [] slandered [her] and other [p]rotestors," although she does not indicate who slandered her or what was said about her. (*Id.*)

4

## II.     Standard of Review

When a party raises one of the defenses listed in Fed. R. Civ. P. 12(b)(6) in a motion for judgment on the pleadings, the Court analyzes that motion as it would a Rule 12(b)(6) motion to dismiss. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987).  Phifer's allegations must be construed in the light most favorable to her, and her well-pleaded facts accepted as true. *Id*. at 12 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974)).  However, the Court need not accept legal conclusions or unwarranted factual inferences. *Morgan*, 829 F.2d at 12.

Although Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claim showing the pleader is entitled to relief," a plaintiff must do more than merely "recit[e] [] the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  The facts pleaded must be sufficient to "raise a right to relief above the speculative level" when accepted as true. *Id*.  The complaint must give Defendants "fair notice of … the claim and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957).  Furthermore, "it is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law.  Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56.  A material fact is defined by substantive law and is necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A genuine issue of fact exists if a reasonable jury could find for the non-moving party. *Id.*  The Court must draw all reasonable inferences in

the light most favorable to the non-moving party. However, a mere "scintilla of evidence in support of the [non-moving party's] position" is insufficient. *Id*. at 252, 106 S. Ct. at 2512.

On July 21, 2008, the magistrate judge granted Phifer leave to proceed *in forma pauperis*. The Court must dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from a defendant who is immune to such relief. 28 U.S.C. § 1915(e)(2). Consequently, the Court will consider whether Phifer's Amended Complaint fails on any of these grounds even though the Defendants have raised only the statute of limitations in their motions for judgment on the pleadings and summary judgment.

**III.    Analysis**

    **A.    Statute of Limitations**

        **1.    Applicable Statute of Limitations**

Claims brought under 42 U.S.C. §§ 1981, 1983, and 1985 are governed by the most analogous state statutes of limitations. *See Owens v. Okure*, 488 U.S. 235, 236, 109 S. Ct. 573, 574 (1989) (general or residual state statute of limitations for personal injury actions applies to § 1983 claims); *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 512-14 (6th Cir. 2003) (state statute of limitations for personal injury actions applies to § 1981 claims, but § 1981 claims alleging employment discrimination are governed by four-year statute of limitations pursuant to 28 U.S.C. § 1658); *Bowden v. City of Franklin*, 13 F. App'x 266, 272 (6th Cir. 2001) (state statute of limitations applies to § 1985 claims). Claims brought pursuant to 42 U.S.C. § 1986 are governed by a one-year federal statute of limitations. 42 U.S.C. § 1986.

Congress enacted a four-year statute of limitations for all claims arising from federal statutes enacted after December 1, 1990. 42 U.S.C. § 1658. Phifer argues that *Jones v. R.R.*

*Donnelly & Sons Co.*, 541 U.S. 372, 124 S. Ct. 1836 (2007), applies this four-year statute of limitations to her § 1981, 1983, and 1985 claims. She also argues that the continuing violation doctrine makes her claims timely if *Donnelly* does not apply.

In *Donnelly*, the Supreme Court considered when a claim arose from a federal statute enacted after December 1, 1990. The answer determined whether the petitioners' § 1981 claim was governed by the state statute of limitations (and was thus time barred), or the four-year period in 42 U.S.C. § 1658. The petitioners argued that their claim arose from a federal statute enacted after December 1, 1990 because 42 U.S.C. § 1981 had been amended in 1991. The Seventh Circuit rejected this argument. It reasoned that a claim arises under a federal statute only when the statute on which the claim depends "creates a wholly new cause of action, one that does not depend on the continued existence of a statutory cause of action previously enacted and kept in force by the amendment." The 1991 amendment to § 1981 did not satisfy that test, "because the text of § 1981(b) 'simply cannot stand on its own'; instead, it merely redefines a term in the original statute without altering the text that 'provides the basic right of recovery for an individual whose constitutional rights have been violated.'" *Donnelly*, 541 U.S. at 374 (quoting *Jones v. R.R. Donnelly & Sons Co.*, 305 F.3d 717, 727 (7th Cir. 2002)). The Supreme Court reversed the Seventh Circuit and held that a claim arises under a statute enacted after a particular date if the claim was made possible by an enactment or amendment of the statute which took place after that date. *Id*. at 382. Thus, a claim brought pursuant to a federal statute enacted before December 1, 1990 but amended after December 1, 1990 arises from a federal statute enacted after December 1, 1990 only if the claim could not have been brought under the unamended statute.

As none of Phifer's claims were made possible by a post-1990 amendment of 42 U.S.C.

7

§§ 1981, 1983 or 1985, the four-year limitation of 42 U.S.C. § 1658 does not apply. Consequently, her claims under §§ 1981, 1983 and 1985 are governed by Michigan's three-year statute of limitations for personal injury actions, *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005), and her claim under § 1986 is governed by the one-year period provided by 42 U.S.C. § 1986.

### 2. Continuing Violation Doctrine

Phifer argues that even if Michigan's three-year statute of limitations applies to her claims, the continuing violation doctrine renders them timely even though many of the events complained of took place more than three years before she filed this action. Normally, the statute of limitations begins to run when the plaintiff knows or should have known through reasonable diligence of the injury of which she complains. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). However, the continuing violation doctrine may toll the statute of limitations and render otherwise untimely claims timely. *Id*.

The Sixth Circuit recognizes two species of continuing violations: serial violations consisting of a series of discriminatory or retaliatory acts, and "those identified with a longstanding and demonstrable policy of discrimination." *Id*. The injurious nature of each discriminatory act comprising a serial violation is easily identifiable. *Id*. at 267. By contrast, each act comprising a policy violation may not be independently actionable, and as a result the discrimination "cannot be said to [have] occur[red] on a particular day," but rather "over a series of days or perhaps years." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S. Ct. 2061, 2073 (2002). The Court regards Phifer's §§ 1981 and 1983 claims as alleged serial violations because each of the acts complained of independently provided notice that her rights were reputedly being violated.

In *Morgan*, the Supreme Court limited the continuing violation doctrine's application in cases alleging serial violations. Before *Morgan*, Sixth Circuit law entitled a plaintiff "to have the court consider all relevant act[s] … including those that would otherwise be time barred" in serial violations. *Sharpe*, 319 F.3d at 267. However, *Morgan* prevents the invocation of the continuing violation doctrine to "allow recovery for [discrete] acts which occurred outside the filing period." *Id.* (citing *Morgan*, 536 U.S. at 114, 112 S. Ct. at 2073).

*Morgan* limited the continuing violation doctrine in the context of Title VII claims. The Sixth Circuit normally applies the doctrine to Title VII rather than § 1983 claims. *Sharpe*, 319 F.3d at 267. However, the Sixth Circuit has extended the limitation on the doctrine announced in *Morgan* to §§ 1981 and 1983 claims. Therefore, Phifer may not rely on acts which occurred more than three years before she filed this action to support her § 1981 and § 1983 claims. There is no need to consider whether Phifer's § 1985 claim should be characterized as a serial or a policy violation, or whether the continuing violation doctrine applies to it at all, because Phifer fails to allege all the elements of a § 1985 claim.

**B.    Application of the Statute of Limitations to Phifer's §§ 1981, 1983, and 1986 Claims**

Phifer filed suit on July 14, 2008. 42 U.S.C. § 1986 has a one-year limitations period. Because none of the alleged violations occurred on or after July 15, 2008, Phifer's § 1986 claims against all Defendants are time barred and must be dismissed with prejudice. Furthermore, because her § 1981 and § 1983 claims borrow Michigan's three-year statute of limitations for personal injury actions, and are alleged serial violations for which the time to file cannot be tolled by the continuing violation doctrine, events which occurred before July 15, 2005 cannot form the basis of her § 1981 and § 1983 claims. None of the events in which employees of GLM are alleged to have been involved occurred after July 15, 2005. Therefore, Phifer's § 1981 and §

9

1983 claims against Rev. Daniels, Hertel, GLM, GLM Board and all John Doe GLM employees and directors are dismissed with prejudice. Phifer's § 1981 and § 1983 claims against Officer Gannon are also dismissed with prejudice because the last event in which he is alleged to have been involved occurred on June 9, 2005.

### C.     Sufficiency of the §§ 1981 and 1983 Claims not Barred by the Statute of Limitations

Four of Phifer's allegations occurred less than three years before she filed this action and are not barred by the statute of limitations. *Supra* at 4. Phifer fails to state a § 1981 claim arising from these incidents.  § 1981 prohibits racial discrimination in the formation, modification and enforcement of private contracts. *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004); *Arendale v. City of Memphis*, 519 F.3d 587, 598 (6th Cir. 2008). Phifer alleges infringement of her First and Fourteenth Amendment rights, not her right to make, modify or enforce a contract. Phifer's § 1981 claim is thus dismissed with prejudice.

To state a § 1983 claim, Phifer must establish that Defendants: 1) acted under color of state law; and 2) deprived her of a federally guaranteed right. *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 475 (6th Cir. 2008). One acts under color of state law when he misuses "power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191, 109 S. Ct. 454, 462 (1988) (internal quotations omitted). Phifer's complaint that "Defendants have [] slandered" her fails because GLM and its employees did not act under color of state law. (Docket no. 42 at 13 ¶ 69.) Furthermore, even if the Defendants were state actors, Phifer has not alleged that their slander deprived her of any federally guaranteed right.

The police did act under color of state law in the events described in ¶¶ 67, 68 and 72 of the Amended Complaint. However, Phifer has not alleged any fact suggesting that they deprived

10

her of her First Amendment rights. Her Amended Complaint does not indicate what the officers did or said, or how the officers' actions interfered with the exercise of her rights. Instead, it asserts the conclusory allegation that the police "stopped, detained and harassed" Phifer while she was protesting. (*Id*. at 13.) Absent any factual basis for this conclusion, the Amended Complaint does not state a § 1983 claim for violation of Phifer's First Amendment rights.

Phifer's Fourteenth Amendment equal protection claim similarly fails. An equal protection violation is established by a demonstration of discriminatory intent and discriminatory effect. *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 533-34 (6th Cir. 2002). Phifer alleges that the Defendants "did not subject white citizens who use their civil liberties" to the treatment she and her fellow protestors received. (Docket no. 42 at 19.) However, she alleges no fact to support this conclusion. She also avers that on other occasions the police have stopped her while she was driving and issued her unwarranted tickets. (*Id*.) To demonstrate discriminatory effect in a selective enforcement claim, Phifer must show that similarly situated individuals were not ticketed. *Id*. at 534. She has made no such allegation. Phifer's § 1983 claim against the GRPD officers for violating her Fourteenth Amendment equal protection rights must be dismissed because she has alleged no fact establishing discriminatory intent or effect.

### D. § 1985 Conspiracy Claim

To establish a conspiracy to deprive her of her rights or privileges pursuant to 42 U.S.C. § 1985(3), Phifer must demonstrate:

> (1) the existence of a conspiracy; (2) intended to deprive any person or class of persons the equal protection or equal privileges and immunities of the law; (3) an act in furtherance of the conspiracy; and (4) injury or deprivation of a federally protected right.

*Royal Oak Entm't, LLC v. City of Royal Oak*, 205 F. App'x 389, 399 (6th Cir. 2006).

Furthermore, "'there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798 (1971)). Phifer has neither shown the existence of a conspiracy nor alleged any fact suggesting that the conduct she complains of was motivated by racial or any other class-based animus.

Phifer claims that GLM employees conspired with the police to violate her civil rights. She alleges that GLM called the police while she was protesting on June 9, 2005. Officer Gannon arrived and allegedly "ha[d] a conspiracy conversation with GLM Program Director Delbert Teachout." (Docket no. 42 at 8.) After this conversation, Gannon purportedly "harasse[d] and threatene[d] Plaintiff to deprive [her] of [her] civil rights." (*Id.*) Phifer does not claim she overheard their conversation, nor does she aver that Gannon and Teachout agreed to do anything, much less deprive her of her civil rights. This allegation is nothing more than the assertion that GLM called the police, that Officer Gannon arrived, and that upon arrival Gannon spoke with Teachout. To establish a conspiracy, Phifer must allege facts which, when taken as true, are sufficient to "suggest that an agreement was made." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965. "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id*. at 557, 127 S. Ct. at 1966. Furthermore, Phifer has alleged nothing to suggest that any of the Defendants were at any time motivated by racial animus.

Phifer also claims the "P[ersonal] P[rotection] O[rder] was issued … in [a] conspiracy by Defendants." (Docket no. 42 at 11.) She avers that Rev. Daniels filed for the PPO "after conspiring with Grand Rapids Police." (*Id.*) However, she alleges no fact suggesting an

12

agreement. She also claims that before Rev. Daniels obtained the PPO, a unidentified GRPD officer "who pulled [her] over on Ionia between Bartlett & Cherry" told her he would advise GLM that it could not obtain "a PPO to stop a boycott." (*Id.* at 10.) The only actor she directly implicates in the issuance of the PPO is Rev. Daniels. (*Id.* at 10-12.) Rev. Daniels acknowledged that Officer Gannon encouraged him to petition for a PPO if he believed Phifer was harassing him. (Docket no. 36-2 at 4.) However, even this does not suggest Officer Gannon agreed to do anything or had reason to believe Rev. Daniels lacked a good-faith basis for the petition. Phifer has alleged nothing which suggests that the police agreed to help Rev. Daniels obtain a PPO for the purpose of interfering with the exercise of her rights, privileges or immunities, or that they were motivated to do so by racial or any other class-based animus.

Furthermore, even if Officer Gannon conspired with Rev. Daniels to help him obtain a PPO, the PPO issued on June 14, 2005, outside the statute of limitations. The Court has not addressed whether a § 1985 conspiracy claim could be a policy species of continuing violation that would toll the statute of limitations. Even if it could, the continuing violation doctrine would be inapplicable to Phifer's conspiracy claim against Officer Gannon. Phifer has not alleged that Officer Gannon engaged in any other conspiratorial conduct, nor has she implicated any other officer in the purported PPO conspiracy.

Because Phifer alleges no facts showing the existence of an agreement or suggesting that the Defendants were motivated by racial or other invidious class-based discriminatory animus, her § 1985 claim must be dismissed for failure to state a claim.

### E. Municipal Liability

Phifer alleges that Grand Rapids and the GRPD have municipal liability for the actions of the police. Under Michigan law, the GRPD "is subsumed by [the city] as a municipal entity,"

13

and cannot be a separate defendant in this case. *Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) (citing *Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997)). The GRPD must thus be dismissed from this action. Furthermore, Phifer's claims against Grand Rapids must be dismissed because she has failed to state an underlying claim against the individual police officers. "A municipality … cannot be liable under § 1983 absent an underlying constitutional violation by its officers." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004).

## IV. Conclusion

For the aforementioned reasons, Defendants' motions for judgment on the pleadings and summary judgment are granted. Phifer's claims against all Defendants are dismissed. The parties' other outstanding motions are denied as moot.

A separate Order will issue.


Dated: June 23, 2009                                /s/ Gordon J. Quist
                                          GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE